# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAUL VAN TERRY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO SUPPRESS**<br><br>Case No. 2:09-CR-719DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Paul Van Terry's Motion to Suppress any and all evidence seized from Defendant's residence in Millard County, Utah on July 1, 2009, on the grounds that the Affidavit for Search Warrant lacked the necessary probable cause to support issuance of a search warrant. Because the determination of probable cause is confined to the application for a search warrant that was presented to the judge issuing the warrant, the court did not hold an evidentiary hearing. The court, however, heard legal argument from counsel at a hearing on May 19, 2010. At the hearing, Defendant was present and represented by Ronald J. Yengich, and Plaintiff was represented Drew Yeates. The court has carefully considered the parties' memoranda and arguments relating to this issue. Now, being fully advised, the court enters the following Findings of Fact, Conclusions of Law, and Order.

## FINDINGS OF FACT

There appears to be no dispute as to the relevant facts in this case. On July 1, 2009,

Deputy Millard County Attorney, Patrick S. Finlinson, prepared an Affidavit for Search Warrant, seeking to search the master bedroom closet of Defendant's home in Millard County, Utah, for evidence of the crime of Possession of a Firearm by a Restricted Person. The Affidavit contains six substantive paragraphs.

The Affidavit states that "[o]n or about June 30, 2009, [Millard County] Deputy Pedersen took written statements from Nick Thompson and Heather Penrod stating that on June 29, 2009, they had seen a brown rifle or shotgun in the master bedroom walk-in closet at Paul V. Terry's residence." The Affidavit then described the residence as "a dark red brick and stucco single family rambler style home located at approximately 7050 West 6000 South in the Deseret area of Millard County, Utah."

The Affidavit does not identify what room in the house is the master bedroom. The Affidavit does not state the master bedroom's location in the house or any means of identifying the master bedroom from other rooms in the house. Furthermore, the Affidavit states that the home is Paul V. Terry's residence, but it does not identify who was presently living in the home. Moreover, the Affidavit does not state that Terry occupied the master bedroom or used the walk-in closet of the master bedroom.

After explaining that Deputy Pedersen took statements from two witnesses and describing the exterior of the residence, the Affidavit identifies Heather Penrod as Paul Terry's step-daughter and states that she and Thompson had been helping Penrod's mother, Shelley Terry, remove her belongings from the home on June 29, 2009. The Affidavit states that "Thompson and Penrod entered the master bedroom walk-in closet to get a bag and observed a rifle or shotgun with a brown stalk." The Affidavit then states that Penrod observed the firearm in the

2

master bedroom walk-in closet again on July 1, 2009.

No other information is provided with respect to the individuals' occupancy of the house. The Affidavit also fails to provide any information regarding Paul and Shelley Terry's relationship. It can be deduced from the identification of Heather Penrod as Paul Terry's stepdaughter and Shelley Terry's daughter, that Paul and Shelley Terry were married. But, there is no information stating that they shared the master bedroom and its closet or slept in separate rooms. The only information provided as to Shelley Terry was that Penrod and Thompson were removing her belongings from the residence.

The Affidavit concludes with a paragraph stating that Paul Terry is a Category II restricted person pursuant to Utah Code Annotated Section 76-10-503(1)(b).

## CONCLUSIONS OF LAW

Defendant contends that the search of his home violated his Fourth Amendment rights because the Affidavit for Search Warrant was not supported by probable cause sufficient to issue a search warrant. The court reviews "the sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and simply ensuring 'that the magistrate had a substantial basis for concluding that probable cause existed.'" *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001).

Probable cause is defined as " a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). To determine whether probable cause exists, the court must make a commonsense determination from a totality of the circumstances presented as to whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *See id.* at 236; *see also United States v.*

*Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001) ("Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place").

In this case, the particular place to be searched is identified in the affidavit as the master bedroom's walk-in closet. The affidavit, however, does not identify the location of the master bedroom in the house or how to distinguish it from the other rooms in the house. One cannot assume that the master bedroom is the only room with a walk-in closet or the only room with an attached bathroom. Many newer homes have a bathroom and walk-in closet attached to each of the rooms. No information is provided in the affidavit regarding the configuration of rooms in the house in question. In addition, a master bedroom could be considered the largest bedroom in the house or the bedroom in which the owner of the home resides, but that may not always coincide. The owner of the home could choose to reside in a smaller room in order to allow several children to share a larger room. In such a situation, there could be some ambiguity as to which bedroom was the actual master bedroom.

Most significantly, even if the master bedroom was identifiable based on the description in the affidavit, the affidavit does not provide any factual support connecting Mr. Terry to the master bedroom walk-in closet or the belongings in that closet. There are no facts alleged that Mr. Terry used the room or the closet. While one may surmise that Mr. Terry, as owner of the home, would have access to the master bedroom closet, there are no factual allegations in the affidavit as to the occupants of the house or their use of the rooms or closets in the house. The only factual assertion regarding the use of the master bedroom closet is that Mrs. Terry used it.

Based on the allegations in the affidavit, there is no way of knowing whether Mr. Terry was the only occupant of the house, whether he resided there with a family, or whether he rented out individual rooms in the house. Therefore, the court concludes that the affidavit does not adequately establish Mr. Terry's connection to the master bedroom walk-in closet. Accordingly, the court concludes that the affidavit was too factually deficient to establish probable cause .

In the event that the court determined the affidavit to be deficient, the United States argues that the court should not suppress the evidence seized based on the good faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 922 (1984). In *Leon*, the Court held that the exclusionary rule does not apply as long as the executing officers were acting in objectively good faith reliance on the subsequently invalidated search warrant. *Id.*

When determining whether to apply the *Leon* exception, courts presume that an officer executing a warrant has acted in good faith. *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985). But the *Leon* Court specifically recognized that the good faith exception would not apply when "a warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 899. In other words, when an underlying affidavit completely fails to state facts which support probable cause, a reasonable officer should not rely on the warrant. *United States v. Danhouer*, 229 F.3d 1002, 1007 (10th Cir. 2000). "[L]aw enforcement officials are presumed to have a reasonable knowledge of the law, and we determine good faith in this context by considering whether a 'reasonably well trained officer would have known that the search warrant was illegal despite the magistrate's authorization." *United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005).

In this case, the court concludes that a reasonably well-trained officer would have realized that the search warrant was too factually deficient to identify which room in the house was the master bedroom and Mr. Terry's connection to the closet in the master bedroom. The affidavit in this case is factually devoid of the necessary information to actually establish probable cause and it amounts to the kind of police misconduct that courts need to deter. Moreover, the magistrate issuing the search warrant based on the deficient affidavit appears to have abandoned his role in determining probable cause. The court, therefore, concludes that the good faith exception does not apply and the evidence seized as a result of the first and second searches of Mr. Terry's house should be and, hereby, is suppressed.

## CONCLUSION

Based on the above reasoning, Defendant's motion to suppress is GRANTED. The evidence seized as a result of the first and second searches of Mr. Terry's house is suppressed.

DATED this 11th day of June, 2010.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge